# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ESTATE OF SKYLER JUSTICE ANDERSON-COUGHLIN, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br> *Defendant*. | No. 3:16-cv-01492 (JAM) |

## ORDER GRANTING MOTION TO DISMISS

Plaintiffs Todd Anderson and Seana Coughlin bring this action in their capacity as co-administrators of the estate of their deceased son, Skyler Anderson-Coughlin.[1] They seek to hold the United States liable under the Federal Tort Claims Act for the tragic death of their son after his car was struck by a tractor trailer truck that was carrying U.S. mail. I will dismiss this lawsuit for lack of jurisdiction because none of plaintiffs' claims are cognizable under the Federal Tort Claims Act.

### BACKGROUND

In the early evening of November 10, 2013, Skyler Anderson-Coughlin was driving north on Interstate 91 in Longmeadow, Massachusetts. He died after his car was struck in the rear by a tractor trailer that was hauling U.S. mail from North Carolina to Massachusetts.

The driver of the tractor trailer was Anatoliy Untilov. He worked for a company known as Stepanov Trucking, which in turn was a subcontractor for a company known as Beam

---

[1] The operative complaint in this matter also lists the Estate of Skyler Anderson-Coughlin as a plaintiff. The estate is not a proper plaintiff. Under Connecticut law, "[a]n estate is not a legal entity. It is neither a natural nor artificial person, but is merely a name to indicate the sum total of the assets and liabilities of the decedent or incompetent. Not having a legal existence, it can neither sue nor be sued." *Rock v. Univ. of Connecticut*, 323 Conn. 26, 32 (2016). Nevertheless, the operative complaint properly lists as plaintiffs the co-administrators of the estate, who are real parties in interest and who may sue in their representative capacity. *See* Fed. R. Civ. P. 17; *see also Fletcher v. City of New London*, 2017 WL 690533, at *3 (D. Conn. 2017).

1

Brothers, Inc. ("Beam"). The United States Postal Service contracted with Beam to be a Highway Contract Route Supplier ("supplier"). Beam's role as a supplier was to haul bulk mail along specified routes pursuant to the terms of its contract with the Postal Service.

To perform its obligations under the supplier contract, Beam was required to furnish its own vehicles and equipment, as well as to pay for the fuel necessary to operate its vehicles. Beam was solely responsible for the maintenance of its equipment and for insuring motor vehicles used in the performance of its Postal Service contract.

Beam was also required to provide its own drivers. The Postal Service did not pay or provide any benefits to drivers operating under the contract with Beam. The Postal Service could not terminate drivers that were hired by or on behalf of Beam.

Pursuant to the supplier contract, the Postal Service required Beam, in broad terms, to employ personnel to perform operations under the contract who were suitable for the performance of the contract. The contract required contract employees to be able to perform the required duties, to be reliable and trustworthy, to appear neat and clean, and to conduct themselves professionally. But Beam, as the supplier under the contract, was responsible for ensuring that its employees satisfied the guidelines of the Postal Service.

The supplier contract also permitted Beam to subcontract for the services to be performed under the contract. Subcontractors like Stepanov Trucking were required to meet all of the same capability and qualification requirements as the prime contract supplier. But Beam as the prime supplier was required to "supervise . . . the operations of its subcontractors which provide services under [the] contract personally or through representatives." Doc. #39-2 at 61.

In order for any contract drivers to haul U.S. mail and to access postal facilities, they were required to be determined eligible by the Postal Service. Untilov was twice determined to be eligible by the Postal Service, once in 2008 and again in 2012.

A document titled "Management Instruction PO-530-2009-4" set forth the procedures for screening contractor personnel and determining if they were eligible to haul U.S. mail. *See* Doc. #40-1. According to this Management Instruction, the supplier was required to provide the following items to an administrative official at the Postal Service: a contract personnel questionnaire filled out by the applicant, an authorization and release for a background investigation, a fingerprint card, and a copy of the driver's current driving record. The Postal Inspection Service was then responsible for reviewing the forms, performing the required background checks, and adjudicating the clearance application.

A driver would not be eligible if he had certain criminal history circumstances, such as a felony conviction within the previous five years, an outstanding arrest warrant, or a conviction for stealing mail. Nor would a driver be eligible if, in the previous five years, he had more than two reckless or careless driving convictions, more than two at-fault accidents, or more than five moving violations (or three or more for the same offense). Additionally, the applicant could not have any drug convictions or convictions for leaving the scene of an accident.

Plaintiffs filed this lawsuit on September 9, 2016. On November 11, 2016, defendant moved to dismiss the action for lack of subject matter jurisdiction under the Federal Tort Claims Act. On April 17, 2017, a hearing was held on the motion. In an oral ruling, I denied the motion without prejudice to defendant's refiling its motion after allowing plaintiff to conduct limited jurisdictional discovery. *See* Doc. #33. On July 7, 2017, defendant filed a renewed motion to dismiss.

**DISCUSSION**

The Federal Tort Claims Act ("FTCA") applies to tort claims that arise from the activities of the U.S. Postal Service. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484 (2006). Because the FTCA is an exception to the general rule of federal sovereign immunity, a federal court lacks subject matter jurisdiction over any tort claim that arises from the activities of the Postal Service unless the claim falls within the scope of an allowed claim under the FTCA. *See ibid.*

The United States as representative of the Postal Service moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that plaintiffs have not alleged a claim that falls within the jurisdictional scope of the FTCA. Where, as here, a defendant makes a fact-based motion to dismiss a complaint under Rule 12(b)(1), the Court may rely on matters outside the pleadings, and it is the plaintiff who ultimately bears the burden to prove the facts that are necessary to the exercise of a federal court's jurisdiction. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Plaintiffs' numerous claims fall into two categories. First, plaintiffs claim that the United States is liable under principles of *respondeat superior* for the negligent acts of Untilov when he crashed into Anderson-Coughlin's car. Doc. #44 at 9-10 (¶ 26(*l*)-(q)). Second, plaintiffs claim that the Postal Service itself was negligent in connection with its selection, supervision, and retention of Beam as well as in connection with its screening and adjudication of Untilov's clearance. *See id.* at 7-9 (¶ 26(a)-(k)). I will address both categories of claims in turn.

*Respondeat Superior Liability*

The FTCA waives the sovereign immunity of the United States against claims for property damage or personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under

4

circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Although the FTCA allows for liability against the United States for the torts of its employees, the FTCA does not waive sovereign immunity for suits arising from torts committed by independent contractors of the government. *See* 28 U.S.C. § 2671 (defining employee to exclude independent contractors); *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997) (*per curiam*).

When faced with a claim that a contractor is in reality an employee of the United States government, the Second Circuit applies the "strict control" test, which requires a court to examine whether the federal government retained authority "to control the detailed physical performance of the contract," in that the individual's "day-to-day operations are supervised" by the federal government. *Leone v. United States*, 910 F.2d 46, 49-50 (2d Cir. 1990) (internal quotation marks omitted). By contrast, a contractor for the government is not an employee merely because the government exercised general supervision or oversight over the contractor's work activities. *See Giannaccio v. United States,* 207 F. Supp. 3d 184, 191 (D. Conn. 2016); *Wesolowska v. United States*, 2012 WL 3728175, at *2 (D. Conn. 2012).

In light of the strict control test, the record here clearly establishes that Untilov was an independent contractor, not an employee of the government. The Postal Service did not supervise the day-to-day activities of Untilov. In fact, there were multiple degrees of separation between the Postal Service and Untilov. Untilov was employed by Stepanov Trucking, which was a subcontractor of the primary contract supplier, Beam. The supplier contract expressly delegated the responsibility of supervising operations under the contract to Beam.

Plaintiffs have not come forth with evidence to show that the Postal Service exercised the degree of control necessary to render Untilov an employee of the government for purposes of the FTCA. The jurisdictional discovery that occurred in this case included a deposition of a Postal Service manager of transportation contracts who explained that contract truck drivers were not required to communicate with postal employees. Doc. #39-3 at 12. Plaintiffs' counsel pressed the manager about who at the Postal Service directed or interacted with Beam drivers, and the manager explained that Postal Service employees communicated directly with Beam, and Beam in turn contacted the drivers. *Id.* at 22.

In support of their argument that the Postal Service exercised control over Untilov, plaintiffs point to the specifications in the contract and the safety guidelines in a highway contractor safety handbook, PO-515. But this argument overlooks the rule that "detailed guidelines" for performance of duties under the contract "are an insufficient basis to satisfy the strict control test." *Leone*, 910 F.2d at 50. "The question is not whether a contractor must comply with federal regulations and apply federal standards, but whether its day-to-day operations are supervised by the Federal Government." *Ibid.* By imposing these requirements, the Postal Service was acting as a general overseer of the delivery of mail under the contract, but the job of supervising drivers' conformity with the requirements under the contract was delegated to Beam.

Nor do the contents of the highway contractor safety handbook establish that the day-to-day operations were supervised by the Postal Service. The handbook provides that administrative officials, who are postal employees, are to "implement and monitor day-to-day actions required by these and other safety guidelines." Doc. #45-10 at 11. But it does not follow that these administrative officials *supervised* the daily activities of drivers such as Untilov. The handbook goes on to provide that it is a supervisor's responsibility to "set a good example," to "[k]now the

operation of your equipment," to "[i]nspect often all issues related to safety operations (employee actions, vehicles, equipment, etc.)," to "[t]ake corrective action," to "[m]aintain discipline," and to "[k]now your employees." *Id.* at 11. It is clear from the terms of the contract and the Postal Service manager's deposition testimony that it was Beam—not the Postal Service—who was to fulfill the expectations of the "supervisor" as set forth in the handbook. Docs. #39-2 at 61; #39-3 at 60-61. The requirements of the supervisor stand in stark contrast to the role of the administrative officer, who acts "as an overseer [and] . . . does not manage the details of [a driver's] work or supervise him in his daily duties." *Leone*, 910 F.2d at 50.

In this case, the Postal Service exercised even less supervision than was exercised in *Leone*. In *Leone*, the Second Circuit considered whether contract air medical examiners, whose responsibility it was to medically certify pilots in accordance with oversight and procedures specified by the Federal Aviation Administration ("FAA"), were employees within the meaning of the FTCA. The examiners were required to follow a guide that provided step-by-step instructions for medically certifying pilots. *See id.* at 48. The FAA continually evaluated the examiners with rigorous assessments of the adequacy of the medical examination forms, the certification error rate, professional performance and personal conduct of the examiners, attendance at seminars, and performance reports. *Ibid.* None of this detailed oversight rose to the level of day-to-day supervision that would be required in order for an individual to be deemed a federal government employee. *Id.* at 49-50.

The Postal Service supplier contract that is at issue here contemplated random inspections by Postal Service employees of equipment used to perform services under the contract and a screening of contract drivers hauling mail and accessing postal facilities under the contract. *See* Doc. #39-2 at 27, 33. This level of oversight is not as intensive as even the kind of oversight in

7

*Leone*, let alone does it reach the level of day-to-day control and supervision that is required to demonstrate for FTCA purposes that a contractor is an employee.

Other courts have concluded that drivers hauling mail under similar contracts are not Postal Service employees. *See, e.g.*, *Hines v. United States*, 60 F.3d 1442, 1447 (9th Cir. 1995), *abrogated on other grounds by United States v. Olson*, 546 U.S. 43 (2005); *Norton v. Murphy*, 661 F.2d 882, 884 (10th Cir. 1981); *Jones v. United States*, 2013 WL 2477288, at *5-7 (S.D. Ind. 2013); *Grandjean v. United States*, 2012 WL 12964777 (E.D. Okla. 2012); *Lerma v. United States*, 716 F. Supp. 1294, 1297-99 (N.D. Cal. 1988), *aff'd*, 876 F.2d 897 (9th Cir. 1989).

There is nothing in the record that warrants a different conclusion in this case. Because Untilov was not an employee of the Postal Service, I will dismiss all claims against the United States that are framed to proceed under a theory of *respondeat superior*. *See* Doc. #44 at 9-10 (¶ 26(*l*)-(q)).

### *Direct Negligence Claims*

As noted above, plaintiffs further argue that the Postal Service was itself negligent with respect to its selection and oversight of Beam, as well as its implementation of its driver-screening requirements. The Government argues in response that these activities fall within the scope of the discretionary function exception to FTCA liability. I agree.

The FTCA does not waive sovereign immunity for claims that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception bars suits if two conditions are met: "(1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in

8

considerations of public policy or susceptible to policy analysis." *Molchatsky v. United States*, 713 F.3d 159, 162 (2d Cir. 2013) (*per curiam*) (internal quotation marks omitted). The exception protects both high-level policy or planning decisions as well as "day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is wisest." *Fazi v. United States*, 935 F.2d 535, 538 (2d Cir. 1991).

Two of plaintiffs' claims of negligence implicate the Postal Service's selection and retention of Beam as a highway contract route supplier. *See* Doc. #44 at 7-8 (¶ 26(b), (f)). Congress has granted the Postal Service wide berth in contracting for the provision of mail transportation service. "The Postal Service may obtain mail transportation service . . . by contract from any person or carrier for surface and water transportation under such terms and conditions as it deems appropriate subject to the provisions of this section." 39 U.S.C. § 5005(a)(3). Moreover, "in determining whether to obtain transportation of mail by contract" the Postal Service "shall use the mode of transportation which best serves the public interest, due consideration being given to the cost of the transportation service . . . ." *Id.* § 5005(c).

In light of this very broad language, the Second Circuit has not surprisingly held that "the award of Government contracts is generally held to involve the exercise of a discretionary function," and that in the postal context this function "involves a number of policy factors, including the contractor's past performance, the nature of the routes, the needs of postal users, and . . . due consideration of what best serves the public interest." *Myers & Myers v. United States*, 527 F.2d 1252, 1256 (2d Cir. 1975) (internal citations and quotation marks omitted).

It is true that Beam and several of its senior officers have recently pleaded guilty and been sentenced for a long-running conspiracy to violate federal motor safety laws.[2] But even assuming that the Postal Service made a poor choice when deciding to contract with and retain Beam as a supplier, the FTCA does not "provide a remedy on account of such discretionary acts," even for acts "involving an abuse of discretion." *Dalehite v. United States*, 346 U.S. 15, 30 (1953). Plaintiffs' claims regarding the selection and retention of Beam as a supplier are therefore barred by the discretionary function exception.

Plaintiffs next allege that the Postal Service was negligent in failing to ensure that Beam adhered to the safety specifications and requirements under the contract. *See* Doc. #44 at 7-8 (¶ 26(c), (d), (g), (i), (k)). Plaintiffs, however, do not—and cannot—point to any prescribed course of action the Postal Service must follow in monitoring or policing the supplier's compliance with the specifications in the contract and other safety requirements. *See Jones*, 2013 WL 2477288, at *7 ("With regard to [plaintiff's] claims of negligent oversight by the Postal Service, we know of no federal statute or regulation that dictates the manner in which the Postal Service is required to oversee its contractors or assure that its contractors comply with federal regulations and the provisions of the HRC contracts.").

The Postal Service's degree of supervision of the supplier's compliance with safety requirements was discretionary. *See Moody v. United States*, 753 F. Supp. 1042, 1056 (N.D.N.Y. 1990). In addition, the decision whether and to what extent to police compliance is readily susceptible to a policy analysis. It necessarily implicates balancing the allocation of limited resources against public safety considerations. *See, e.g.*, *Reichhart v. United States*, 408 F. App'x

---

[2] *See* Beam Bros. Trucking, Inc., Beam Bros. Holding Company and Executives Sentenced on Federal Conspiracy Charges, U.S. Dep't of Justice (Nov. 30, 2017), *available at* https://www.justice.gov/usao-wdva/pr/beam-bros-trucking-inc-beam-bros-holding-company-and-executives-sentenced-federal.

441, 443 (2d Cir. 2011) (discretionary function applied to decision of U.S. Army Corps of Engineers not to repair pier where plaintiff was injured, because "[i]n deciding not to repair the Pier, the Corps considered, among other things, the purpose of the Pier, whether the deterioration of the Pier's surface compromised its structural integrity, whether the hazard was open and obvious, the cost to repair the Pier, and allocation of the Corps' resources"). Accordingly, plaintiffs' claims of negligence regarding the Postal Service's supervision of Beam and its drivers are barred by the discretionary function exception.

The remainder of plaintiffs' claims target the Postal Service's approval of Untilov as a driver to haul mail. Doc. #44 at 7-8 (¶ 26(a), (e), (h), (j)). Again, plaintiffs have failed to show facts that would support a claim that the Postal Service's decision to approve Untilov fell outside the discretionary function exception. Plaintiffs do not point in this regard to a statute, regulation, or policy that the Postal Service failed to follow. "In the absence of allegations demonstrating relevant mandatory obligations, the Court presumes that the challenged acts and omissions are discretionary and not amenable to suit." *Molchatsky v. United States*, 778 F. Supp. 2d 421, 435 (S.D.N.Y. 2011), *aff'd*, 713 F.3d 159 (2d Cir. 2013).

After I ordered jurisdictional discovery in this case, the Government produced the Management Instruction (described above) that sets forth the screening policy for contractor personnel and documents relevant to the screening and adjudication of Untilov's clearance. This evidence clearly demonstrates that the Postal Service followed its screening requirements. The record shows that the Postal Service received the required forms for the clearance application and performed the background checks. Untilov did not have any disqualifying criminal convictions. Additionally, Untilov did not have more than the maximum of five moving

violations in a five year period or more than three of the same type of violations. *See* Doc. #40-2 at 7-10, 31, 33, 36, 38.

Plaintiffs fault the Postal Service for clearing Untilov despite the fact he did not speak English, had received citations for moving violations, and "was not properly trained to drive a tractor-trailor." Doc. #45-1 at 2. None of these shortcomings mandatorily required the Postal Service to deny a clearance for Untilov. The Management Instruction does not set forth an English proficiency standard. The Instruction does set limits on the number of moving violations an applicant may have on his record, but plaintiffs do not allege that Untilov exceeded the allowable number of violations. Finally, the Instruction does not indicate that a measurable level of tractor-trailer driving training is a factor in determining clearance eligibility. The instruction does require that the driver be over 18 years of age and have at least two years of driving experience. Doc. #40-1 at 6. It is clear from the record that Untilov easily satisfied this requirement. Doc. #40-2 at 11, 20. Given the absence of any factual showing that the Postal Service failed to follow a mandatory directive in processing and adjudicating Untilov's clearance, I conclude that the alleged acts or omissions of the Postal Service regarding Untilov's clearance were discretionary in nature.

I also conclude that the exercise of discretion in screening and adjudicating Untilov's clearance is susceptible to a policy analysis. Determining the appropriate depth and breadth of a clearance screening necessarily implicates the allocation of resources to be sufficiently grounded in economic and social policy considerations. In adjudicating the clearance, the Postal Service would have to consider the consequences a discretionary denial would have on a contractual partner and on the supply of available contract drivers. In addition, denying an application on a non-mandatory ground could result in an additional administrative burden in the form of an

12

appeal. *See* Doc. #40-1 at 10-11 (discussing appeal and reconsideration process). Accordingly, plaintiffs' claims of negligence with regard to the screening and adjudication of Untilov's clearance are not cognizable under the FTCA because of the discretionary function exception.

Finally, in their briefing and through counsel at oral argument, plaintiffs have argued that they should be entitled to yet more discovery to establish that their claims fall within the FTCA. I do not agree. Sovereign immunity is an immunity from suit, not merely immunity from liability. Such immunity "is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery." *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009); *Molchatsky*, 778 F. Supp. 2d at 438. I allowed jurisdictional discovery in this matter to permit plaintiffs a fair opportunity to ascertain whether they can allege claims that fall within the FTCA's waiver of sovereign immunity. Plaintiffs are still unable to allege such claims. Defendant is therefore entitled to sovereign immunity.

## CONCLUSION

Defendant's motion to dismiss (Doc. #39) is GRANTED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 28th day of December 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge